**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |  |
|---|---|---|
| JAMES WILLIAMS, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 1:23-CV-01950-SDG |
| | ) | |
| FLEETCOR TECHNOLOGIES, INC. | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**MOTION TO DISMISS FIRST AMENDED COMPLAINT
AND FOR SANCTIONS UNDER 28 U.S.C. § 1927**

# **TABLE OF CONTENTS**

I.      Introduction. ..................................................................................................1

II.     Relevant Background. ....................................................................................2

     A.    Plaintiff's allegations in the First Amended Complaint. ......................2

     B.    FleetCor's post-motion conferral. .........................................................4

III.    Rule 12(b)(6) Standard. ..................................................................................5

IV.     Argument. .......................................................................................................6

     A.    Plaintiff still fails to adequately plead that his account was established
          primarily for personal, family, or household purposes, an essential
          element of his EFTA claim. ...................................................................7

          1.    Plaintiff's new allegations don't show that his account was
               primarily established for personal, family, or household
               purposes. ....................................................................................8

          2.    The Cardholder Agreement between the parties (which is
               central to Plaintiff's EFTA claim) further confirms that
               Plaintiff's account was not primarily established for personal,
               family, or household purposes. .................................................12

     B.    Plaintiff's GFBPA claim fails to allege several essential elements....13

     C.    This Court should also sanction Plaintiff's counsel under 28 U.S.C. §
          1927 for refiling a claim after learning it was frivolous. ....................15

V.      Conclusion. ...................................................................................................18

# I.    Introduction.

In his initial Complaint, Plaintiff alleged that FleetCor Technologies, Inc. ("FleetCor") violated the Electronic Fund Transfer Act ("EFTA," 15 U.S.C. § 1693 *et seq*.) by failing to credit his employment-related pre-paid card account for purportedly fraudulent transfers.  FleetCor responded by moving to dismiss under Rule 12(b)(6).  It explained that the EFTA only applies to consumer accounts—those "established primarily for personal, family, or household purposes"—and that Plaintiff's Complaint contained no factual allegations supporting this essential element.

Plaintiff didn't oppose FleetCor's motion.  Instead, he filed an Amended Complaint that: (a) tries to bolster the insufficient allegations that plagued his first Complaint; and (b) adds a Georgia Fair Business Practices Act ("GFBPA") claim for good measure.  But these claims are just as meritless, and dismissal is still required.

The EFTA claim again fails to plausibly allege that his account was primarily established for personal, family, or household purposes—particularly given the plain language of the Cardholder Agreement (which is central to his claim) governing his account: "These Cards are offered exclusively to businesses for purposes of distributing non-payroll funds."  And Plaintiff's new GFBPA claim fails for a host

of independent reasons, the most notable being Plaintiff's failure to comply with the statute's strict pre-filing notice requirement.

The First Amended Complaint also subjects Plaintiff's counsel to sanctions under 28 U.S.C. § 1927. After it moved to dismiss the first Complaint, FleetCor tried to avoid the expense of litigating this matter any further by providing Plaintiff's counsel everything it needed to dismiss: The Cardholder Agreement that not only shows Plaintiff's account was established for business purposes but contains this dispositive representation, "You acknowledge . . . that all accounts that can be accessed under this Agreement are not accounts established primarily for personal, family or household purposes . . . . [T]he provisions of the [EFTA] . . . do not apply[.]" Counsel ignored FleetCor's letter, and when asked (repeatedly) to provide support for Plaintiff's position, ignored that too. This is the exact type of conduct that 28 U.S.C. § 1927 is intended to prevent.

For these and other reasons below, the Court should grant FleetCor's motion to dismiss and award it sanctions under 28 U.S.C. § 1927.

## II.    Relevant Background.

### A.    Plaintiff's allegations in the First Amended Complaint.

Plaintiff's initial Complaint alleged that sometime in June and July 2022, he experienced several purportedly fraudulent transfers on his FleetCor account.

Compl. ¶¶ 2, 14-15.  He also posits that FleetCor is a "global *business* payments company and provider of fuel payment cards."  Compl. ¶ 11 (emphasis added). Despite this, Plaintiff alleged that his "account with Defendant Fleetcor was used for personal, family, or household purposes."  Compl. ¶ 10.  His Complaint did not, however, include any other allegations to support that conclusory legal assertion. *See generally* Compl.

After FleetCor identified these deficiencies in its initial motion to dismiss (ECF 7), Plaintiff filed a First Amended Complaint ("FAC").  The facts set forth in the FAC are largely identical to those in the first Complaint.  The only material difference is that Plaintiff adds a handful of allegations that relate to his *use* of the card account.  He specifically claims that "the sole source of funds in Plaintiff's Account at issue are his W-2 income and per diem payments from his employer" (FAC ¶ 3); that his "card is mainly for savings" and "rarely used" (FAC ¶¶ 18-19); and that his infrequent "uses include personal air travel, meals, and a personal cruise" (FAC ¶ 23).  None of Plaintiff's new allegations mention the purpose for which his account was *established*, however.  *See generally* FAC; *see also* Ex. A ("Cardholder Agreement").

He also now alleges that he was confused by FleetCor's use of "reimbursement" in pre-suit correspondence in purported violation of the GFBPA. *See* FAC, ¶¶ 48-57.  And he does so despite simultaneously acknowledging that FleetCor and/or Comdata (one of FleetCor's independent affiliates) apprised him of its decision-making every step of the way through "significant back-and-forth correspondence."  *See* FAC, ¶¶ 24-30, 50-51.  Notably, nowhere in the FAC does Plaintiff mention the GFBPA's pre-filing notice requirements, let alone allege that he satisfied them.  *See generally* FAC.

### B.  FleetCor's post-motion conferral.[1]

After FleetCor moved to dismiss, it voluntarily sent Plaintiff's counsel a letter on July 5, 2023 ("Letter"), explaining why Plaintiff's EFTA claim lacked a good-faith basis.  *See* Ex. B ("Keilson Decl."), Ex. 1 (July 5, 2023 Letter).  This Letter explained that Plaintiff sued the wrong defendant (FleetCor instead of Comdata, Inc., an independent affiliate), detailed the results of FleetCor's factual investigations, and voluntarily provided Plaintiff (before any formal discovery) with the Cardholder Agreement that governs the account at issue.  *Id.*; *see also* Cardholder Agreement. The Letter gave Plaintiff a chance to voluntarily dismiss his suit, rather than proceed

---

[1] FleetCor does not rely on any of the facts in this section to support its request for dismissal under Rule 12(b)(6).

in bad faith with meritless claims.  *See generally* Keilson Decl., Ex. 1.

Plaintiff's counsel acknowledged receipt of the letter but never substantively responded to it.  Keilson Decl., ¶ 3.  Plaintiff filed the FAC instead, ignoring the Cardholder Agreement entirely and artfully failing to address the purpose of the account's establishment.  *Id.*; *see also* FAC (failing even to mention the word "establish" in the amended pleading).   Plaintiff also added an even more baseless GFBPA claim.  *See infra* IV.B.

During a subsequent telephonic conferral, the undersigned asked Plaintiff's counsel for legal support for his position and cautioned him that persisting with claims that lack a good-faith basis would result in a (reluctant) 28 U.S.C. § 1927 motion.  Keilson Decl., ¶ 4.  Plaintiff's counsel never provided any support, ignored the undersigned's follow-ups, and persisted with Plaintiff's claims.  *Id.*

## III.   Rule 12(b)(6) Standard.

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.,* 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is plausible on its face when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the

defendant is liable for the conduct alleged.  *Id.*

"[C]onclusory allegations, unwarranted deductions of facts[,] or legal conclusions masquerading as facts will not prevent dismissal." *Asset Mgmt. v. Jaharis*, 297 F.3d 1182, 1187–88 (11th Cir. 2002).   The Eleventh Circuit consistently "has held that conclusory allegations without specific supporting facts have no probative value." *Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000).   It, and other courts in this jurisdiction, have also explained that merely parroting statutory definitions is plainly "insufficient to state a claim." *See, e.g.*, *Hawkins v. Nat'l Apartment Mgmt. LLC*, No. 1:21-CV-04432, 2022 WL 2784809, at *3 (N.D. Ga. May 31, 2022).

Courts may also consider documents not "physically attached to a pleading" when those documents are incorporated by reference and central to the claims at issue.  *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[C]ourt[s] may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed.").

## IV.   Argument.

The Court should dismiss both of Plaintiff's claims under Rule 12(b)(6).  It should likewise sanction Plaintiff's counsel under 28 U.S.C. § 1927 for doubling

down on an EFTA claim that it knows is frivolous and expanding the proceedings by filing a GFBPA claim without satisfying a basic procedural prerequisite.

### A. Plaintiff *still* fails to adequately plead that his account was established primarily for personal, family, or household purposes, an essential element of his EFTA claim.

Plaintiff's FAC suffers from the same defect as his last Complaint: the EFTA doesn't apply because he has not properly pled that his account was established primarily for personal, family, or household purposes.

The EFTA doesn't apply to all accounts. It governs consumer accounts, and only to the extent those accounts are "established primarily for personal, family, or household purposes." *See* 15 U.S.C. § 1693a(2) ("the term 'account' means a demand deposit, savings deposit, or other asset account . . . *established primarily for personal, family, or household purposes*") (emphasis added); *see also Gilbert & Caddy, P.A. v. JP Morgan Chase Bank, N.A.*, 193 F. Supp. 3d 1294, 1302 n.1 (S.D. Fla. 2016) ("The Court notes that the Electronic Fund Transfer Act of 1978 defines 'consumer' as a 'natural person' and 'consumer accounts' as accounts 'established primarily for personal, family, or household purposes."). Courts thus routinely dismiss EFTA claims when plaintiffs fail to adequately allege (or later prove) that their accounts are primarily established for consumer purposes. *See, e.g., Maynard v. PayPal, Inc.*, No. 18-CV-259, 2019 WL 3552432, at *10 (N.D. Tex. Aug. 5, 2019)

(finding dismissal of EFTA claim warranted where the reasonable inference from the complaint was that the account was for commercial transactions and business purposes rather than personal, family, or household purposes); *Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384, 402 (W.D.N.Y. 2010) (granting motion to dismiss where accounts were business, not consumer, accounts).

> ### 1. Plaintiff's new allegations don't show that his account was primarily established for personal, family, or household purposes.

Plaintiff once again fails to plead facts in support of the necessary elements of his EFTA claim. Nowhere in the FAC does Plaintiff even *allege* that his account was "established" for consumer reasons. He instead just claims he "used" his account for such purposes (in part), meaning not even his parroting mirrors the statutory elements adequately. *See* FAC ¶ 11 ("[h]is Comdata account with Defendant Fleetcor was ***used*** for personal, family, or household purposes.") (emphasis added); *see also Capehart v. Equifax Info. Servs., LLC*, No. 1:19-CV-2493, 2020 WL 9594285, at *4 (N.D. Ga. Jan. 15, 2020) (dismissing consumer claim because Plaintiff "simply parroted the elements of the statute"). [2]

---

[2] Plaintiff also fails to allege the purpose for which his account was "primarily" established. *See also* ECF 7-1, 5-6.

The new allegations Plaintiff adds to the FAC suffer from the same problem. All of them relate to his purported *use* of the account, not the purpose for which it was *established*. *See, e.g.*, FAC ¶ 3 ("[T]he sole source of funds in Plaintiff's Account at issue are his W-2 income and per diem payments from his employer"); ¶ 18 ("his 'card is mainly for savings'" and the card is "rarely *used*") (emphasis added); ¶ 19 ("Plaintiff, in fact, rarely *used* the Account" and "its *use* [was] primarily for savings") (emphases added); ¶ 20 ("his Account's infrequent authorized *uses* include personal air travel, meals, and a personal cruise") (emphasis added); ¶ 23 ("Plaintiff *used* the account 'mainly for savings'") (emphasis added).  In fact, the only allegations arguably concerning the account's establishment confirm it was created for *business* reasons, not consumer ones.  *See* FAC ¶ 12 (alleging FleetCor is a global *business* payments company).  This alone means the Court should dismiss his claim, just as others have under similar circumstances.  *See, e.g.*, *Binns v. BB&T Bank*,  377 F. Supp. 3d 487, 493 (E.D. Pa. 2019), *aff'd* 803 F. App'x 618 (3d Cir. 2020) (dismissing EFTA Claim after crediting the title on the account over the plaintiff's use to determine its established purpose); *Maynard*, 2019 WL 3552432, at *10 (granting motion to dismiss EFTA claim where Plaintiff's allegations raised the "inference that [the account] was used for commercial transactions," as here).

"Use" alone obviously couldn't be dispositive of an EFTA claim. Conflating "establish[]" with "use" under the statute would misinterpret its unambiguous text to the point of rewriting it. 15 U.S.C. § 1693(a)(2); *United States v. Aldrich*, 566 F.3d 976, 978 (11th Cir. 2009) ("The 'cardinal canon' of statutory interpretation is that 'courts must presume that a legislature says in a statute what it means and means in a statute what it says there.'"). And permitting such conflation would be particularly problematic here, where both parties *already agree* that a business (Plaintiff's employer) established an account and then let an employee (Plaintiff) access it, given the Congressional intent in drafting the EFTA. Indeed, Congress' "primary objective" in drafting the EFTA was "the provision of *individual consumer* rights" where the "application of existing *consumer* protection legislation [wa]s unclear." 15 U.S.C. § 1693(a)-(b) (emphases added). Those same concerns are not present in an account that a business establishes for its employees to access as part of their employment. In that instance, the business is better positioned than the consumer to assert its rights under whatever governing law may apply. That is why Congress directed courts to look to the purpose of the account's establishment, rather than its use, to determine whether its falls under the protection of the EFTA.

Relying on "use" rather than "establishment" would also lead to absurdities. If "use" were the litmus test, for example, *any* account could be a business account one day and a consumer account governed by the EFTA the next based solely on the purchasing whims of the accountholder.  And an accountholder could intentionally breach contractual promises for the very purpose of creating EFTA liability.  This would require businesses like FleetCor or Mastercard to constantly monitor *every* purchase made by hundreds of millions of customers to determine if the EFTA (including its civil and criminal penalties) applies on a minute-by-minute basis.  The EFTA of course doesn't require that—and couldn't without violating due process. *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972) ("It is a basic principle of due process that . . . prohibitions [must be] clearly defined" so that those under its reach may know how to "steer between lawful and unlawful conduct"); *Baggett v. Bullitt*, 377 U.S. 360 ("[A] law forbidding or requiring conduct in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates due process of law."); *see also id.* at 376 (requiring courts to "presume[] that the statute will be construed in such a way as to avoid the constitutional question presented").

2.     **The Cardholder Agreement between the parties (which is central to Plaintiff's EFTA claim) further confirms that Plaintiff's account was not primarily established for personal, family, or household purposes.**

Nor could Plaintiff have pled in good faith that his account was "established primarily for personal, family, or household purposes." His Cardholder Agreement—which is central to his claim and undisputed[3]—conclusively establishes that his account was a business account related to his employment. *See* 12 C.F.R. Pt. 205, Supp. I, ¶ 3(a)(1) (stating that the requirements of Regulation E, and thus the EFTA, only apply to accounts for which there is an agreement, like the Cardholder Agreement); *see also* FAC ¶ 12 (alleging FleetCor provides fuel payment cards to businesses).

The Cardholder Agreement is explicit: "[Y]ou are not accessing your bank checking or savings account when you use your Card. These Cards are offered exclusively to businesses for purposes of distributing non-payroll funds." *See* Ex. A (Cardholder Agreement). And if that were not enough, Plaintiff expressly acknowledged the parties' understanding that the EFTA doesn't apply because the account was established for business, not consumer, reasons: "You acknowledge, represent and warrant that all accounts that can be accessed under this Agreement

---

[3] *See infra* III (citing *Day v. Taylor*, 400 F.3d at 1276, and explaining that documents may be considered on a motion to dismiss which are central to the claims).

are ***not accounts established primarily for personal, family or household purposes and that the Company provided you with the Card for business purposes***." *Id.*, ¶ 14 (emphasis added).  How Plaintiff (or his employer) may have *mis*used the account after this acknowledgment is thus beside the point entirely.

The Court should therefore dismiss Plaintiff' EFTA claim with prejudice, just as the Court did in *Binns.   See* 377 F. Supp. 3d 487 (E.D. Pa. 2019) (finding a business account rather than a consumer one under the EFTA because the title was more authoritative about the purpose of the account's establishment than how the plaintiff used the account).

**B.    Plaintiff's GFBPA claim fails to allege several essential elements.**

Plaintiff's newly added GFBPA claim also fails for several independent reasons.  First and most notably, Plaintiff didn't make a written demand for relief at least 30 days prior to the filing of an action "reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered."  O.C.G.A. § 10-1-399(b).  This is an absolute requirement.  *See id.*; *see also Alvear v. Sandy Springs Toyota, Inc.*, 775 S.E.2d 172, 177 (Ga. Ct. App. 2015) ("To prevail on a claim under the [Georgia Fair Business Practices] Act . . . a plaintiff must also comply with the ante litem requirement of O.C.G.A. § 10-1-399(b) . . . ."); *Rewis v. Browning*, 265 S.E.2d 316 (Ga. Ct. App. 1980) (affirming trial court's refusal to charge on the

plaintiff's GFBPA claim where the plaintiff did not comply with the notice requirements); *Walker v. JPMorgan Chase Bank, N.A.*, 987 F. Supp. 2d (N.D. Ga. 2013) (barring the plaintiff's recovery under the GFBPA for failing to deliver written demand for relief at least 30 days before filing suit). Plaintiff doesn't even present conclusory allegations that he satisfied this element. *See generally* FAC. This alone dooms the GFBPA claim.

Second, the GFBPA "does not encompass suits based upon allegedly deceptive or unfair acts or practices which occur in an essentially private transaction," and the transactions at issue are exactly that. *Brown v. Morton*, 617 S.E.2d 198, 202 (Ga. Ct. App. 2005) (quoting *Pryor v. CCEC, Inc.*, 571 S.E.2d 454 (Ga. Ct. App. 2002)). Indeed, "[t]he FBPA is no panacea for the congenital ills of the marketplace" and does not apply to actions not "reasonably intended to impact on any 'market' other than [the plaintiff.]" *Brown*, 617 S.E.2d at 202 (reversing the trial court's grant of summary judgment to the plaintiff because the alleged conduct only involved the plaintiff and the defendant, not the consumer marketplace) (quoting *Lynas v. Williams*, 454 S.E.2d 570 (Ga. Ct. App. 1995) and *DeLoach v. Foremost Ins. Co.*, 248 S.E.2d 193 (Ga. Ct. App. 1978)). Here, Plaintiff complains about FleetCor's actions in an *individualized* transaction with him. *See* FAC ¶¶ 15-32. Plaintiff does not complain of activity that affected the marketplace as a whole

and, instead, just disagrees with FleetCor's conduct with respect to a specific set of transactions.  Even Plaintiff's own allegations show that FleetCor took Plaintiff's dispute seriously and took diligent efforts to investigate it.  *See e.g.*, FAC ¶¶ 24-25. That's not a deceptive or unfair practice under the GFBPA.

Third, the provision of the GFBPA that Plaintiff travels under doesn't apply. Plaintiff alleges that FleetCor's actions created "actual confusion or actual misunderstanding as to affiliation, connection, or association with or certification by another." FAC ¶ 55 (quoting O.C.G.A. § 10-1-393(a)).  But Plaintiff's own allegations have nothing to do with representations about affiliations with or certifications by another.  Nor even do Plaintiff's allegations concerning issuance of reimbursements and/or provisional credits. FAC ¶¶ 25-27. None of Plaintiff's statements mention FleetCor's affiliation with another entity, and none even suggest that FleetCor engaged in any activity that actually misled Plaintiff as to its certifications by another.  Plaintiff's GFBPA claim thus fails for this reason too.

### C.    This Court should also sanction Plaintiff's counsel under 28 U.S.C. § 1927 for refiling a claim after learning it was frivolous.

Plaintiff's continued maintenance of an EFTA claim after learning that it is meritless also subjects his counsel to sanctions for multiplying proceedings vexatiously.  28 U.S.C. § 1927.  "An attorney . . . who so multiplies the proceedings

in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Id.*  This statute imposes a continuing duty upon attorneys to dismiss claims that are no longer viable. *Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006), *reh'g denied* (Mar. 14, 2006).  An attorney must thus reassess claims and previous court submissions throughout the litigation. *Harrison v. Dean Witter Reynolds, Inc.*, 132 F.R.D. 184 (N.D. Ill. 1990), *appeal dismissed* 974 F.2d 873, *cert. denied* 509 U.S. 904.  A court may order reimbursement of attorneys' fees so long as it agrees that counsel's conduct "falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party."  *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997); *see also Shepherd v. Wellman*, 313 F.3d 963, 969 (6th Cir. 2002), *reh'g denied* (Feb. 24, 2003) ("We construe 'vexatiously multiplying proceedings' to include conduct where 'an attorney knows or reasonably should know . . . that his or her litigation tactics will needlessly obstruct the litigation of non-frivolous claims.") (quoting *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986)).

While Plaintiff's counsel may have had a good-faith basis to file Plaintiff's initial Complaint, it filed the First Amended Complaint *knowing* that its claims were frivolous. Counsel for FleetCor sent a letter to counsel for Plaintiff on July 5, 2023. Keilson Decl., Ex. 1. In it, FleetCor explained why Plaintiff's claims were foreclosed by the EFTA and explained that Plaintiff had sued the wrong defendant. *Id.* In addition, FleetCor voluntarily supplied Plaintiff with the dispositive Cardholder Agreement, demonstrating the EFTA didn't apply to Plaintiff's business-related account. *Id.*, Ex. 1, ¶ 14 ("You acknowledge, represent and warrant that all accounts that can be accessed under this Agreement are ***not accounts established primarily for personal, family or household purposes and that the Company provided you with the Card for business purposes***.") (emphasis added). Plaintiff's counsel ignored the dispositive Cardholder Agreement as well as undersigned counsel's many requests for counsel to provide legal support for its position, opting instead to file a FAC containing artful omissions about the account's establishment and a frivolous GFBPA claim. Keilson Decl., ¶¶ 3-4.

This is precisely the kind of conduct that 28 U.S.C. § 1927 was enacted to prevent, and the unnecessary attorneys' fees FleetCor was forced to incur are directly attributable to Plaintiff's counsel's vexatious multiplication of the proceedings. *See* 28 U.S.C. § 1927. Plaintiff needed to dismiss this suit once shown that it was not

17

viable but inexplicably failed to do so. *Jolly Group*, 435 F.3d at 720. Nothing justifies this conduct, and FleetCor shouldn't have to bear the cost of moving to dismiss a claim that counsel should've never re-filed.

FleetCor accordingly asks that the Court award it fees and costs from July 5, 2023, continuing until this matter is resolved.

## V.    Conclusion.

FleetCor requests that this Court dismiss all claims with prejudice under Federal Rule of Civil Procedure 12(b)(6) and award it attorneys' fees and costs pursuant to 28 U.S.C. § 1927 from July 5, 2023 onward.

Respectfully submitted this 29th day of August 2023.

*/s/ Matthew A. Keilson*
Ryan D. Watstein
Georgia Bar No. 266019
Matthew A. Keilson
Georgia Bar No. 216676
WATSTEIN TEREPKA LLP
1055 Howell Mill Road, 8th Floor
Atlanta, Georgia 30318
T: 678-372-0408
E: ryan@wtlaw.com
   mkeilson@wtlaw.com

*Counsel for Defendant*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing document complies with the font and page limitations of the Local Rules.

Dated: August 29th, 2023.

> */s/ Matthew A. Keilson*
> Matthew A. Keilson
>
> *Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that today, I caused to be electronically filed a true and correct copy of the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Dated: August 29th, 2023.

> */s/ Matthew A. Keilson*
> Matthew A. Keilson
> *Counsel for Defendant*