UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JAMES WILLIAMS,<br><br>*Plaintiff*,<br><br>v.<br><br>FLEETCOR TECHNOLOGIES, INC.,<br><br>*Defendant*. | Case Number: 1:23-cv-01950-SDG |

## PLAINTIFF'S OPPOSITION TO DEFENDANT FLEETCOR TECHNOLOGIES, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927

*/s/H. Cooper Ellenberg*
H. Cooper Ellenberg
Schlanger Law Group, LLP
80 Broad Street, Suite 3103
New York, NY 10004
T: 212-500-6114
F: 646-612-7996
E: hellenberg@consumerprotection.net

*/s/ Justin T. Holcombe*
Justin T. Holcombe (GA Bar No. 552100)
jholcombe@skaarandfeagle.com
Kris Skaar (GA Bar No. 649610)
kskaar@skaarandfeagle.com
SKAAR & FEAGLE, LLP
133 Mirramont Lake Drive
Woodstock, GA 30189
Tel: (770) 427-5600
Fax: (404) 601-1855


James M. Feagle (GA Bar No. 256916)
jfeagle@skaarandfeagle.com
Cliff R. Dorsen (GA Bar No. 149254)
cdorsen@skaarandfeagle.com
SKAAR & FEAGLE, LLP
2374 Main Street, Suite B
Tucker, GA 30084
Tel: (404) 373-1970

*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................... 1

FACTS ............................................................................................................... 3

ARGUMENT ...................................................................................................... 5

   I.   Plaintiff States an EFTA Claim................................................................ 6

   A. Plaintiff's Account Meets the EFTA's Definition of an "Account"............... 6

   B. Payroll Cards Such As The One At Issue In This Case Have Been Explicitly Covered         Since 2007. ....................................................................... 7

   C. The Cardholder Agreement Language Upon Which Defendant Now Relies Is Not Properly Before This Court And Is In Any Event Barred Under The EFTA's Anti-Waiver Provision.................................................................................. 9

   II.   Plaintiff has adequately pleaded an O.C.G.A. § 10-1-393 GFBPA claim..13

   III.   Plaintiff has adequately stated an EFTA claim and, at a minimum, should be permitted to conduct discovery with respect to the purpose for which the Account was established.  FleetCor's motion to dismiss should be denied. FleetCor's Motion for Sanctions Pursuant to 28 U.S.C. § 1927 is Haphazard and Frivolous ....................................................................................................15

   A. Background....................................................................................................16

   B. There is No Basis for Sanctions Pursuant to 28 U.S.C. 1927........................19

   IV.   Leave To Amend ...................................................................................21

CONCLUSION ................................................................................................21

## PRELIMINARY STATEMENT

James Williams ("Williams" or "Plaintiff") is a victim of identity theft and unauthorized transactions from his FleetCor Technologies, Inc. and/or Comdata, Inc. account (the "Account") totaling approximately $10,850 dollars.  Plaintiff is a professional welder and received his W-2 payroll wage income and per diem payments to the Account from his employer, Riley Power Group.  FAC, ¶ 3, ¶¶ 20 - 21.  Plaintiff disputed the transactions, but Defendant ultimately denied his disputes. Plaintiff filed his original complaint, stating a cause of action for violation(s) of the Electronic Fund Transfer Act.  ECF No. 1.

Defendant FleetCor filed a motion to dismiss the Plaintiff's complaint on Friday, June 30, 2023.  ECF No. 7.  FleetCor presented a single argument in support of its motion to dismiss, asserting that the Plaintiff failed to allege that the Account was "established primarily for personal, family, or household purposes."  ECF No. 7-1, pg. 3 – 4.

Plaintiff, pursuant to F.R.C.P. 15(a)(1), amended his complaint, asserting claims under the EFTA and the Georgia Fair Business Practices Act ("GFBPA"). ECF No. 12.  Plaintiff's First Amended Complaint contains factual allegations which make clear that the Account was, in fact, established primarily for personal, family, or household purposes.  FAC, ¶ 3, ¶¶ 18 – 23.  Most saliently, Plaintiff alleges that he regularly received his W-2 payroll income in his account.  *Id.*  Plaintiff's First

Amended Complaint states that "the sole source of funds in Plaintiff's Account at issue are his W-2 income and per diem payments from his employer. *Id.* Payroll card accounts and accounts receiving a consumer's wage income are subject to the EFTA.

FleetCor nevertheless filed its Motion to Dismiss the Plaintiff's First Amended Complaint and, inexplicably, for Sanctions pursuant to 28 U.S.C. § 1927. In support of its motion, FleetCor presents the same singular argument, asserting that Plaintiff's Account was not established primarily for personal, family, or household purposes. ECF No. 15. FleetCor's argument is premised on the existence of provisions in the Cardholder Agreement purporting to disclaim application of the EFTA and to declare the Account a business account. ECF No. 15, pgs. 6 – 9. The EFTA and Regulation E unambiguously apply to payroll card accounts. Reg. E, 12 C.F.R. § 1005.18 [§ 205.18]. The EFTA prohibits agreements purporting to waive or limit its application, such as those in the present matter. 15 U.S.C. § 1693l.

FleetCor's inclusion of the purported Cardholder Agreement and two Declarations in its motion to dismiss impermissibly introduces matters "outside of the pleadings". *Taam Assocs. v. Housecall Medical Resources, Inc.,* 1998 U.S. Dist. LEXIS 22372 (N.D. Ga, March 30, 1998). Summary judgment is premature, and Plaintiff is entitled to reasonable notice. *Id.*

2

FleetCor's argument for dismissal of Plaintiff's GFBPA claim is similarly misguided.  FleetCor contends that Plaintiff failed to adequately satisfy the pre-suit notice obligation and that the transaction at issue is private, and therefore outside the scope of the GFBPA.  ECF No. 15, pgs. 13 – 14.  FleetCor had notice of Plaintiff's dispute, and the purported waiver of the EFTA in the Cardholder Agreement is a matter specifically identified as broadly consumer-related and warranting EFTA coverage.

Plaintiff has sufficiently stated claims under the EFTA and GFBPA, and certainly does not present a frivolous EFTA claim.  FleetCor's motion for sanctions pursuant to 28 U.S.C. § 1927 is haphazard, at best.  FleetCor's Motion to Dismiss and for Sanctions is due to be denied.

## FACTS

From June 2022 to July 2022, unknown perpetrator(s) managed to access the funds in Plaintiff's Account and made unauthorized transactions with Cash App accounts unknown to Plaintiff totaling $10,850.  FAC, ¶ 6.  Upon discovery, Plaintiff immediately contacted Defendant Fleetcor on or about August 18, 2022, to report and dispute the transactions.  *Id.* at ¶ 7.  On August 22, 2022, Plaintiff sent dispute-related correspondence to Fleetcor, stating that his "card is mainly for savings" and that the card is "rarely used."  *Id.* at ¶ 8.  Plaintiff, in fact, rarely used the Account, and primarily utilized the account for saving his payroll income.  *Id.* at ¶ 9.

3

Most importantly, Plaintiff alleges that he received his W-2 individual employee payroll and per diem compensation in the Account, and that his Account's infrequent authorized uses include personal air travel, meals, and a personal cruise. *Id.* at ¶ 10.  Plaintiff's W-2 and per diem income are the sole source of funds in the Plaintiff's Account.  *Id.* at ¶ 11.

On September 1, 2022, Plaintiff also filed a complaint with the Better Business Bureau ("BBB") regarding the matter (BBB Complaint ID #18255711). *Id.* at ¶ 12.  On September 19, 2022, Defendant Fleetcor finally finished its investigation and reimbursed the Stolen Funds into his Account.  *Id.* at ¶ 13.  On the same date, Defendant Fleetcor also responded to Plaintiff's BBB complaint by stating that it issued a "reimbursement for 15 of the 17 items disputed."  *Id.* at 14.  In early November of 2022, upon checking the balance of his Account, Plaintiff discovered that the reimbursed funds were re-taken from his account.  *Id.* at ¶ 16.

Defendant Fleetcor now claims that the reimbursement was only a "provisional credit" and that it reversed the credit when further investigation showed that, "based on the response from the merchant", the transfers/charges were valid. *Id.* at ¶ 17.

Subsequently, Plaintiff identified three additional unauthorized transfers from his account that occurred on June 2, 2023 for $262.47 to Comcast Boston, on June 5, 2023 for $242.00 dollars to T-Mobile, and on May 23, 2023 for $141.83 to T-

Mobile, and promptly disputed those transactions with Fleetcor. *Id.* at ¶ 21.  On June 9, 2023, Fleetcor effectively denied the Plaintiff's disputes by indicating that it considered the charges authorized. *Id.* at ¶ 22.

To date, FleetCor has yet to reimburse the Stolen Funds.

## **ARGUMENT**

Plaintiff has adequately pleaded the factual basis for pursuing his EFTA claim, including that the account at issue was, in fact, established primarily for personal, family, or household purposes.  FAC, ¶ 3, ¶¶ 18 – 23.  Defendant argues that the EFTA does not apply to the Account, asserting that the Account was not "established primarily for personal, family, or household purposes."  ECF No. 15.  FleetCor's argument is premised on provisions in a Cardholder Agreement referring to the account as a "business" account and waiving his rights under the EFTA. *Id.* Defendant's contention that the Cardholder Agreement is dispositive of the Account's established purpose is misguided, and its waiver provisions independently violate the EFTA.  15 U.S.C. § 1693l.

Plaintiff's First Amended Complaint specifically alleges that he regularly received his payroll income in the Account.  FAC, ¶ 3.  His payroll and per diem income were the only sources of funds in the account. *Id.*  Plaintiff's allegations are sufficient to support his EFTA claim, and any provisions of the Cardholder Agreement purporting to otherwise classify the Account or disclaim applicability of

the EFTA are themselves actionable violations of the EFTA. *Simone v. M & M Fitness LLC,* 2017 U.S. Dist. LEXIS 131366, at *2 (D. Ariz. Sept. 26, 2016).

## I.   Plaintiff States an EFTA Claim

### A. Plaintiff's Account Meets the EFTA's Definition of an "Account".

The Electronic Fund Transfer Act and Regulation E generally cover any "electronic fund transfer" authorizing a "financial institution" to debit or credit a "consumer's account." Reg. E, 12 C.F.R. § 1005.3(a). A "consumer" is any "natural person." 15 U.S.C. § 1693a(2); Reg. E, 12 C.F.R. § 1005.2(b)(1) [§ 205.2(b)(1)].

. An "account" means a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan as defined in section 1602(i) [1] of this title), as described in regulations of the Bureau, established primarily for personal, family, or household purposes." 15 U.S.C. § 1693a.

The "EFTA does not explicitly set the boundaries of what constitutes 'personal, family, or household purposes.'" Nor does the Act apply to accounts that are used primarily or solely for commercial purposes." *Fischer & Mandell LLP v. Citibank, N.A.*, 2009 WL 1767621, at *3–4 (S.D.N.Y. June 22, 2009).

However, an account's use for direct receipt of payroll is "an indicia an account [is] established for 'personal, family, or household purposes.' *Yuille v. Uphold HQ Inc.*, 2023 WL 5206888 (S.D.N.Y., Aug. 11, 2023); *see also Cobb v.*

*Monarch Fin. Corp.,* 913 F. Supp. 1164 (N.D. Ill. 1995).  A "checking account opened for the purpose of receiv[ing] direct deposits from a consumer's employer and to pay for personal and household items like rent, utilities, and groceries would clearly fall under the auspices of the EFTA."  *Yuillo*, 2023 WL 5206888, at *7.

Here, the Account existed for the purpose of receipt of payroll and per diem compensation and was used primarily for savings and personal expenditures, both of which are strong indicia that the Account was "established primarily for personal, family, or household purposes."  FAC, ¶ 3, ¶¶ 18 – 21; *see Yuillo at *7; see also Cobb*, 913 F. Supp. at *20 - 23.

Indeed, the Plaintiff's account with FleetCor and/or Comdata, Inc. was established as the default method by which he regularly received his payroll income. FAC, ¶ 3.  Plaintiff contends that discovery will reveal that the account has functioned as a payroll card account for approximately two (2) years, since its inception.

**B.    Payroll Cards Such As The One At Issue In This Case Have Been Explicitly Covered Since 2007.**

Moreover, payroll cards have been explicitly covered by the EFTA / Regulation E since 2007**.**  71 Fed. Reg. 51,437 (Aug. 30, 2006); Reg. E, 12 C.F.R. § 1005.18 [§ 205.18].  Specifically, payroll card amendments to Regulation E, effective in 2007, defined "account", for purposes of the EFTA's applicability, to include "an account that is directly or indirectly established through an employer

7

and to which electronic fund transfers of the consumer's wages, salary, or other employee compensation (such as commissions) are made on a recurring basis." Reg. E, 12 C.F.R. § 1005.2(b)(2) [§ 205.2 (b)(2)].  The Consumer Finance Protection Bureau's uses the same definition of a payroll card when establishing the Rule's scope.  *Id.*  If an employer transmits funds to an account in isolated circumstances, such as emergencies or final payments, an account is not a payroll account.

In the present case, Plaintiff regularly received his payroll compensation from his employer in the Account, and his payroll income and per diem compensation were the sole sources of funds in the Account.  FAC, ¶ 3.  The account was used for savings and limited personal expenditures.  Id. at ¶¶ 18 – 23.  Plaintiff's Account is a payroll card account covered by the EFTA, and direct deposit of his payroll income into the account indicates that it was "established primarily for personal, family, or household purposes."  *See Yuillo*, 2023 WL 5206888, at *7.

An account may be a payroll card account regardless of whether it is established, operated, or managed by an employer, a third-party processor, a depository institution, or any other person. 12 C.F.R. § 1005.2(b)(3)(i)(A) (effective Apr. 1, 2019).  *See also* Consumer Fin. Prot. Bureau, Prepaid Rule's Key Changes for Payroll Card Accounts (Jan. 25, 2018) (available at https://files.consumerfinance.gov.)  Plaintiff regularly received his payroll compensation in the account at issue.  Plaintiff contends that discovery will reveal

that the card account was used for payroll for approximately two (2) years - by default since the beginning of his employment.

### C.   The Cardholder Agreement Language Upon Which Defendant Now Relies Is Not Properly Before This Court And Is In Any Event Barred Under The EFTA's Anti-Waiver Provision.

1.   The Accountholder Agreement Is Outside The Pleadings And Not Permissibly Considered On A 12(b)(6) Motion

Defendant's Motion is based entirely on language in what it alleges to be the relevant Accountholder Agreement that purports to waive Plaintiff's EFTA rights. Dec. of Mark Hollander, attached to ECF No. 15-3.

But as Defendant concedes, the Accountholder Agreement attached to its motion may only be considered at this juncture if it is  (1) central to the plaintiff's claim and (2) undisputed." *See Doe v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

The Accountholder Agreement meets neither requirement.   The First Amended Complaint makes no mention of the Cardholder Agreement, nor does it rely upon it. In addition, it has not been established that the purported Cardholder Agreement is, in fact, the actual Cardholder Agreement, whether the agreement was ever amended, and is thus in dispute.  The applicability of its provisions and waivers are additionally in dispute.  ECF No 12; ECF No. 15.

2.   Defendant Relies Upon Contractual Language Barred Under the EFTA's Anti-Waiver Rule.

The Cardholder Agreement states:

These cards are offered exclusively to businesses for purposes of distributing non-payroll funds

You acknowledge … that all accounts that can be accessed under this Agreement are not accounts established primarily for personal, family, or household purposes … [t]he provisions of the Electronic Fund Transfer Act … do not apply …

Cardholder Agreement, attached to FleetCor's Motion to Dismiss as ECF No. 15-1, "Exhibit A".

However, the EFTA's anti-waiver provision prohibits any "agreement between a consumer and any other person" containing "any provision which constitutes a waiver of any right or cause of action created by this chapter."  15 U.S.C. § 1693l.

It is well-established that the EFTA "prohibits agreements that preclude consumers from exercising rights conferred under EFTA" and the 'use of such an agreement by any party is an actionable violation.'"  *Simone v. M & M Fitness LLC*, No. CV-16-01229-PHX-JJT, 2017 U.S. Dist. LEXIS 54480, at *5 (D. Ariz. Apr. 10, 2017)

*See also* Consumer Fin. Prot. Bureau, Electronic Fund Transfers FAQs, available at www.consumerfinance.gov (see question 4 of "Error Resolution" section; private agreements may not change a financial institution's Regulation E obligations).

Waivers and disclaimers such as the one relied upon by Defendants herein are prohibited by the EFTA regardless of the consumer's intent or subjective knowledge. *See Jordan v. Freedom Nat'l Ins. Servs., Inc.*, 2016 WL 5363752, at *2 (D. Ariz. Sept. 26, 2016). Violations of the EFTA's anti-waiver provision may form the independent basis for actionable EFTA violations. *See Murphy v. Law Offices of Howard Lee Schiff, P.C.*, 2014 WL 710959 (D. Mass. Feb. 26, 2014); *Baldukas v. B & R Check Holders, Inc.*, 2012 WL 7681733 (D. Colo. Oct. 2, 2012), adopted by 2013 WL 950847 (D. Colo. Mar. 8, 2013); *Cobb v. Monarch Fin. Corp.*, 913 F. Supp. 1164 (N.D. Ill. 1995). Waivers claiming to strip consumers of their EFTA rights have been recognized by Courts as the basis for violations of unfair and deceptive practices laws. *Cobb v. Monarch Fin. Corp.,* 913 F. Supp. 1164, 1179 (N.D. Ill. 1995).

Plaintiff's account with FleetCor and/or Comdata, Inc. was a *de facto* payroll account from the time it was established onward, subjecting it to EFTA and Regulation E coverage. Accordingly, provisions of the purportedly applicable Comdata, Inc. Cardholder Agreement violates the EFTA's anti-waiver provision. In the Plaintiff's case, the Cardholder Agreement mischaracterizes the Account as a "business" account. Plaintiff's Account is a payroll card account covered by the EFTA, in spite of the Cardholder Agreement's purported waiver of the Plaintiff's EFTA rights. *See* 15 U.S.C. § 1693l, and the provisions upon which Defendant now

relies constitute independent EFTA violations.  *See Simone v. M & M Fitness LLC*, 2017 U.S. Dist. LEXIS 54480, at *5 (D. Ariz. April 10, 2017).

The authority cited by FleetCor in its brief fails to support its argument that the purported Cardholder Agreement alone is dispositive on the question of whether the Account was "established for personal, family, or household purposes."

*Gilbert & Caddy, P.A. v. JPMorgan Chase Bank, N.A.*, 193 F. Supp. 3d 1294 (S.D. Florida June 15, 2016)is inapposite, as the dispute there pertained to a law firm-Plaintiff's IOTA account, which the Court explained is not a "consumer account" because "[a]n IOTA account is 'an interest or dividend-bearing trust account benefiting The Florida Bar Foundation.' Fla. Bar R. 5-1.1(g)(1)(C).  Like many IOTA accounts, Plaintiff's IOTA Trust Account contained monies related to property closings or funds held for Plaintiff's litigation clients in trust."  *Id.* at * 9 - 10.  The Court explained that, in the context of a law firm as Plaintiff, "[c]orporations or other business entities are not 'consumers' for purposes of EFTA," and the "EFTA does not apply to accounts that are used primarily or solely for commercial purposes." *Ironforge v. Paychex, Inc.*, 747 F. Supp. at 402 (citing *Kashanchi v. Texas Commerce Medical Bank, N.A.*, 703 F.2d 936, 939-42 (5th Cir. 1983) ("The EFTA only protects 'consumers,' meaning natural persons, not business entities"). *Ironforge*, cited by Fleetcor and in *Caddy*, involves another "business" as a plaintiff.

Defendant's reliance on *Maynard v. PayPal, Inc.,* 2019 U.S. Dist. LEXIS 130240 (N.D. Texas Aug. 5, 2019) is equally misplaced.  In Maynard, plaintiffs were Matthew Maynard ("Maynard") and Maynard Investment Group, LLC d/b/a Discount Sport Nutrition ("DSN"), also clearly "businesses" not covered by the EFTA.  *Id.*  Notably, however, *Maynard* reveals that the purpose for which an account is established may be found by reasonable inference from the facts alleged. *Id.* at *24.

*Binns v. BB&T Bank,* 377 F. Supp. 3d 487 (E.D. Pa. 2019) is equally unavailing.  There,  the Plaintiff was "James J. Binns, Esq., as sole shareholder of James J. Binns, P.C.", another "business."  Plaintiff in the case at bar, James Williams is a "natural person", not a "business", and the Account existed for Williams' payroll and per diem income.

## II.      Plaintiff has adequately pleaded an O.C.G.A. § 10-1-393 GFBPA claim

FleetCor's motion to dismiss argues that Plaintiff failed to satisfy the thirty (30) day notice requirement stated in O.C.G.A. § 10-1-399(b), and that the transaction at issue is a private transaction and not subject to the application of Georgia's Fair Business Practices, O.C.G.A. § 10-1-393.

The notice requirement states that "[a]t least 30 days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered,

shall be delivered to any prospective respondent."   Plaintiff's complaint plainly alleges that he notified Defendant in September of 2022, approximately a year ago, of the disputed charges, demanded reimbursement, was in fact reimbursed for 15 of 17 charges, and was subject to reversal of the reimbursement.  FAC, ¶¶ 24 -32.  Both Plaintiff and FleetCor and/or Comdata corresponded with the Better Business Burea regarding the dispute.  *Id.*  Plaintiff clearly notified Defendant by "a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered."  *See Johnson v. GAPVT Motors, Inc.,* 663 S.E.2d 779, 292 Ga. App. 79 (2008) (FBPA notice requirement is liberally construed); *see also 1st Nationwide Collection Agency, Inc. v. Werner*, 288 Ga. App. 457, 654 S.E.2d 428, 2007 Ga. App. LEXIS 1222 (2007) (Analogously, the trial court found that the agency intentionally violated the Fair Debt Collection Practices Act, 15 U.S.C. § 16921, thereby violating the Fair Business Practices Act, O.C.G.A. § 10-1-390 et seq.).

FleetCor contends that the GFBPA claim does not apply to Plaintiff because Plaintiff's transactions were allegedly private in nature.  ECF No. 15, pg. 14. FleetCor is mistaken, and Plaintiff allegations are those bearing on the "consumer marketplace" as required.  *Brown v. Morton,* 617 S.E, 2d 454 (Ga. Ct. App. 2002). Plaintiff's allegations that the Cardholder Agreement, if indeed applicable, contains provisions expressly prohibited by the EFTA, precisely because those provisions

affect consumers in general. *See* 15 U.S.C. 1693l. There is no indication that Plaintiff's situation is unique, and establishing accounts for receipt of payroll while simultaneously disclaiming the application of the EFTA is consumer conduct potentially affecting the consumer marketplace in general. Accordingly, FleetCor's motion to dismiss Plaintiff's GFBPA claim is due to be denied.

**III.   Plaintiff has adequately stated an EFTA claim and, at a minimum, should be permitted to conduct discovery with respect to the purpose for which the Account was established. FleetCor's motion to dismiss should be denied. FleetCor's Motion for Sanctions Pursuant to 28 U.S.C. § 1927 is Haphazard and Frivolous**

FleetCor haphazardly levies serious and consequential allegations against the undersigned for pursuing the Plaintiff's good faith claims on his behalf and engaged in questionable tactics in an attempt to persuade Plaintiff to voluntarily dismiss his lawsuit in lieu of amending his complaint.

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. The standard for imposing sanctions under Fed. R. Civ. P. 11 is different from the standard for imposing sanctions under 28 USCS § 1927. Sanctions under Rule 11 are assessed under an objective standard and, by contrast, § 1927 sanctions must be supported by a finding of subjective bad faith. China Healthways Inst., Inc. v. Hsin Ten Enter. USA, Inc., 67 U.S.P.Q.2d (BNA) 1561,

2003 U.S. Dist. LEXIS 16286 (C.D. Cal. Mar. 12, 2003). Plaintiff's claims are adequately pleaded and, at a minimum, possess a good faith basis. FleetCor therefore is not conceivably capable of meeting the burden of proving any subjective bad faith on the part of the undersigned.

### a.    Background

Plaintiff's counsel is reluctantly compelled to provide the following relevant factual background to his response to FleetCor's motion for sanctions.

One or two business days after filing FleetCor's motion to dismiss on July 5, 2023, counsel for FleetCor sent a letter to Plaintiff's attorneys "to request that Plaintiff voluntarily dismiss his suit." ECF No. 15-1, "Exhibit 1". FleetCor's letter made assertions not contained in its then-recent motion to dismiss, including that Plaintiff's suit should have named Comdata, Inc. rather than FleetCor. *Id.* The letter states that "FleetCor is just an affiliate that had no prior interactions with Plaintiff and didn't even know about this matter until Plaintiff filed suit." *Id.* However, Comdata, Inc.'s own recent filings in the Northern District of Georgia state that Comdata, Inc. is a wholly owned subsidiary of FleetCor, Inc.

Counsel's letter enclosed a Comdata Cardholder Agreement that FleetCor represents is the Cardholder Agreement applicable to the Plaintiff's account. *Id.* The letter reiterated FleetCor's argument that the EFTA does not apply to the Account, referring to provisions disclaiming its applicability in the Cardholder

Agreement.  *Id.*  To bolster its argument, FleetCor included a total of two related citations.  *Id.* at pg. 1.  The first, *Fischer & Mandell LLP v. Citibank, N.A.*, 2009 WL 1767621, at *3 (S.D.N.Y. June 22, 2009), states that the "EFTA does not apply to accounts that are used primarily or solely for commercial purposes."  While true, the quoted language is not directly applicable and has no bearing upon the actual purpose for which Plaintiff's Account was established in the present case.  The second, *Gilbert & Caddy, P.A. v. JP Morgan Chase Bank, N.A.*, 193 F. Supp. 3d 1294, 1305 (S.D. Fla. 2016) is presumably offered to second the same statement.  As discussed *supra*, Gilbert deals with attorney escrow accounts and is clearly inapplicable.

FleetCor's attorney evidently considers this informal production of the Cardholder Agreement and impertinent case citations to be dispositive on the question of the EFTA's inapplicability.

James Williams alleges that he received his personal W-2 wage income in the account at issue in the Plaintiff's First Amended Complaint.  FAC, ¶ 3.  In fact, Plaintiff alleges that "the sole source of funds in Plaintiff's Account at issue are his W-2 income and per diem payments from his employer."  *Id.*  These facts were articulated to FleetCor's counsel during the August 17, 2023, teleconference referred to in FleetCor's motion.  At that time, FleetCor's counsel was advised that Plaintiff was not likely to voluntarily dismiss his suit given the circumstances surrounding

the *actual purpose for which the account was established*, and specifically that the Plaintiff had always received his personal wage income in the Account by default.

Counsel's July 5, 2023 letter goes on to warn that "Plaintiff's suit may even subject his employer to damages to the extent Riley Power Group – which is solely responsible for how employees use the prepaid cards it issues – permitted Plaintiff to use his business-related account for something other than business." FleetCor's counsel, during the teleconference, further speculated that Plaintiff's pursuit of his lawsuit against FleetCor and/or Comdata could result in those entities taking action against Plaintiff's employer for its use of their systems to transmit payroll. Counsel for FleetCor suggested that Plaintiff be forewarned in the event Plaintiff might fear retaliation from his employer.

During the same call, counsel for FleetCor suggested that FleetCor may seek sanctions if Plaintiff did not voluntarily dismiss his suit, and intimated that, were sanctions sought, such would be due to the aggressive stance of his client.

FleetCor's veiled threat of a motion for sanctions during the August 17, 2023 phone call, in addition to counsel's insinuation that this lawsuit could result in negative employment consequences for the Plaintiff were improper. Equally bizarre is counsel for FleetCor's apparent belief that he is entitled to gatekeep the issues that are presented to the Court for argument.

Thereafter, FleetCor's counsel sent general follow-up emails dated August 22, 2023, and August 24, 2023, presumably to determine whether Plaintiff would voluntarily dismiss his suit.   On August 29, 2023, counsel for Plaintiff communicated to FleetCor's counsel by email, stating, "I appreciate the call and follow-up, but Plaintiff does not intend to voluntarily dismiss his case.  We'll address the issues raised in your letter of July 5th in the motion to dismiss the amended complaint that I anticipate your client will file."  Two hours later, FleetCor filed its Motion to Dismiss the Plaintiff's First Amended Complaint and for Sanctions.

### b.    There is No Basis for Sanctions Pursuant to 28 U.S.C. 1927

FleetCor's motion states that the undersigned "ignored FleetCor's letter, and when asked (repeatedly) to provide support for Plaintiff's position, ignored that too." According to FleetCor's attorney, this "is the exact type of conduct that 28 U.S.C. § 1927 is intended to prevent."  ECF No. 15, pg. 2.

The actual language of 28 U.S.C. 1927, Counsel's liability for excessive costs, is:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The standard for imposing sanctions under Fed. R. Civ. P. 11 is different from the standard for imposing sanctions under 28 USCS § 1927.  Sanctions under Rule 11

are assessed under an objective standard and, by contrast, § 1927 sanctions must be supported by a finding of subjective bad faith. *China Healthways Inst., Inc. v. Hsin Ten Enter. USA, Inc.*, 67 U.S.P.Q.2d (BNA) 1561, 2003 U.S. Dist. LEXIS 16286 (C.D. Cal. Mar. 12, 2003).   Plaintiff's claims are adequately pleaded and, at a minimum, possess a good faith basis.  FleetCor therefore is not conceivably capable of meeting the burden of proving any subjective bad faith on the part of the undersigned.

Counsel for FleetCor overlooks that Plaintiff was permitted, as a matter of course, to amend his complaint after FleetCor filed its initial motion to dismiss. F.R.C.P. 15(a)(1).  Plaintiff had no obligation to refrain from filing an amended complaint based upon receipt of FleetCor's July 5, 2023 letter.  Plaintiff is not obligated to first present his arguments to FleetCor before presenting them to the Court.  Nor is FleetCor's attorney entitled to advance-notice of the authority it intends to rely upon in responding to FleetCor's motion to dismiss.

In short FleetCor's motion for sanctions is without any basis.

Plaintiff's First Amended Complaint states a good faith basis for Plaintiff's claims, including detailed allegations regarding the purpose for which Plaintiff's account was established, and FleetCor's motion for sanctions should be denied.

## IV.    Leave To Amend

To the extent that the Court finds Plaintiff's allegations regarding the nature of the account's purpose, the proper identity of the Defendant – whether FleetCor, Comdata, Inc.[1] or other entity, or any other issue insufficient pleaded, Plaintiff respectfully requests leave to amend his Complaint to address any such deficiency.

## **CONCLUSION**

For the reasons set forth herein, Defendants Motion to Dismiss and for Sanctions Pursuant to 28 U.S.C. § 1927 should be denied.


Respectfully submitted, this 12th day of September, 2023,


*/s/H. Cooper Ellenberg*
H. Cooper Ellenberg
Schlanger Law Group, LLP
80 Broad Street
Suite 3103
New York, NY 10004
T: 212-500-6114
F: 646-612-7996
E: hellenberg@consumerprotection.net

---

[1] FleetCor's July 5, 2023 letter states that FleetCor is "just an affiliate" of Comdata, Inc.  ECF No. 15-1, "Exhibit A".  Filings in this District state that Comdata, Inc., is a wholly owned subsidiary of FleetCor Technologies.  *See* Comdata, Inc. v. Hulsey, 1:20-cv-02984 (Sept. 18, 2020), ECF No. 3.

*/s/ Justin T. Holcombe*
Justin T. Holcombe (GA Bar No. 552100)
jholcombe@skaarandfeagle.com Kris Skaar (GA Bar No. 649610)
kskaar@skaarandfeagle.com
SKAAR & FEAGLE, LLP
133 Mirramont Lake Drive
Woodstock, GA 30189
Tel: (770) 427-5600
Fax: (404) 601-1855

James M. Feagle (GA Bar No. 256916)
jfeagle@skaarandfeagle.com
Cliff R. Dorsen (GA Bar No. 149254)
cdorsen@skaarandfeagle.com
SKAAR & FEAGLE, LLP
2374 Main Street, Suite B
Tucker, GA 30084
Tel: (404) 373-1970

*Attorneys for Plaintiff*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing document complies with the font and page limitations of the Local Rules of the Northern District of Georgia.

Dated:        September 12, 2023

*/s/ H. Cooper Ellenberg*
H. Cooper Ellenberg

*Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify I caused to be electronically filed a true and correct copy of the foregoing with the Clerk of Court via the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Dated:        September 12, 2023

*/s/ H. Cooper Ellenberg*
H. Cooper Ellenberg

*Attorney for Plaintiff*